***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rideout and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Rideout with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as: *Page 2 
 STIPULATIONS
1. The date of injury was April 24, 2006.
2. The Employer/Employee relationship existed at all relevant times. McRaven Inc. d/b/a McDonald's was self-insured and that Key Risk Management Services was the third party administrator.
3. The parties were subject to the North Carolina Workers' Compensation Act at the time of the incident of April 24, 2006, and the Employer retained the requisite number of employees to be bound under the provisions of said Act.
4. Plaintiff's average weekly wage is $288.15.
5. The parties participated in a mediated settlement conference on October 27, 2006. Defendants have paid the entire mediation fee in the amount of $1,531.70. Pursuant to Rule 7(c) of the Rules for Mediated Settlement and Neutral Evaluation Conferences of the North Carolina Industrial Commission, defendants are entitled to a credit in the amount of $765.85 for payment of plaintiff's share of the mediation costs, and defendants may withhold funds from any award for this purpose.
6. Plaintiff provided a Recorded Statement on May 8, 2006 to defendants. A transcript of that Recorded Statement, certified by Joan Lepping on May 29, 2006 has been provided to the plaintiff, and the parties stipulated to its admissibility.
 *********** ISSUES
The following issues are before the Commission:
 1. Did plaintiff sustain a compensable injury by accident on April 24, 2006; and *Page 3 
 2. If so, what, if any, additional medical treatment or financial compensation is due.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 51 years old and a resident of Mountain City, Tennessee. She was employed at or above her average weekly wage with defendant.
2. Prior to beginning her work with McDonalds in October 2005, plaintiff had a history of knee give-away incidents. Plaintiff reported to her treating physicians subsequent to April 24, 2006 that she underwent arthroscopic left knee surgery in 1997 or 1998.
3. Plaintiff's medical records show that on September 8, 2000, she reported to Dr. Joseph Grant of Watauga Orthopaedics, stating that she felt a "pop" in her left knee that resulted in her knee giving away, causing her to fall. As a result of this injury, plaintiff had to undergo arthroscopic knee surgery. During chondroplasty, plaintiff was found to have a Grade II ACL strain and a peripheral tear of her lateral meniscus.
4. In October 2005, plaintiff began work for defendant. Plaintiff primarily worked at the front counter. This job required plaintiff to take orders, get food, stock supplies, and perform cashiering. During the hearing before the Deputy Commissioner, the evidence showed that working at McDonald's is a normally a "fast paced" job. Plaintiff stated that she was always "zipping" around the store, and that she normally worked at a fast pace. Tammy Smith-Broseker *Page 4 
testified that plaintiff regularly had to get french fries as a part of her regular work duties, and that this is a part of the job description for a front counter employee.
5. On April 24, 2006, plaintiff worked her normal position at the front counter. Although plaintiff testified that it was "very busy" that afternoon, she confirmed that the front counter was usually very busy during peak hours. While returning from the counter with some french fries for a customer, plaintiff heard a loud "pop" in her left knee and she fell to the ground. Plaintiff required the assistance of her co-employees to get up and make her way to the break room.
6. Plaintiff testified that she could not remember what happened when she fell. However, plaintiff never testified that she slipped or tripped, or that she was caused to fall by any startling or unusual occurrence.
7. In her recorded statement, plaintiff stated that as she going to set down the french fries, she heard "a huge `pop,' and next thing you know (sic), I was on the floor. . . ." Plaintiff offered a similar version in her verified discovery responses, which she confirmed as her own at the hearing before the Deputy Commissioner. Likewise, Stacey Williams testified that plaintiff told him immediately after the incident that "her knee just came out from under her." Similarly, Tammy Smith-Broseker testified that plaintiff told her that her knee "popped" loudly, and then she fell to the ground. Both witnesses testified that plaintiff never indicated that she tripped or slipped, or that anything occurred to cause her to fall.
8. Although plaintiff indicated that there was often melted ice, crushed french fries, and grease on the floor, she did not testify that any such items were on the floor when she fell, or that she slipped on any such items. Rather, Tammy Smith-Broseker testified that the custodial staff cleaned the floor approximately thirty (30) minutes before the incident, and that she saw *Page 5 
nothing on the floor after the fall. Likewise, Stacey Williams, who was two (2) feet away from plaintiff when she fell, testified that he checked the floor immediately after she fell to ensure that nothing caused her to fall, and he found that the floor was clean.
9. The Full Commission finds, based upon a careful review of the evidence of record, that plaintiff has failed to present evidence of an interruption of her routine of work and the introduction thereby of unusual conditions resulting in her knee injury on April 24, 2006.
10. Stacey Williams transported plaintiff to the hospital on April 24, 2006 for evaluation of her left knee injury. Plaintiff was provided with crutches and released the same day. As a result of her injury, plaintiff testified that she missed two or three days of work. Afterwards, she returned to the defendant, who accommodated plaintiff with a stool as she worked at the drive-through counter.
11. Plaintiff followed up with Dr. John C. Newell. Based on plaintiff's description of her medical history and the event on April 24, 2006, Dr. Newell opined that plaintiff's occurrence on April 24, 2006 was "most compatible with a giving away episode" resulting from her initial ACL tear in 1997.
12. In discussing the nature of plaintiff's injury, Dr. Newell said that one of two things happened on April 24, 2006; either plaintiff had "a gradual change in loss of stability or . . . she had a single episode in 2006 where she lost her stability and developed what is now an unstable knee that hurts and is painful and swells."
13. Under the first scenario, Dr. Newell explained that plaintiff had a knee which had "no ACL," and "on that date, it gave way with a pop, and she landed on the ground."
14. Under the second scenario, Dr. Newell stated that "the other possibility is that her first injury represented a partial anterior cruciate ligament tear, where that knee would typically *Page 6 
function in a near-normal fashion, but her new injury ripped the rest of those ACL fibers loose. So now she has a more unstable knee and one that made a more dramatic change from working almost normally to now working very poorly." Under this scenario, plaintiff's partial tear would have completed on April 24, 2006.
15. Dr. Newell could not testify to any degree of medical certainty that there was additional injury to the ACL as suggested under his second scenario. Rather, he testified that he could only "speculate" that she may have completed her ACL tear on April 24, 2006. Dr. Newell further testified that whether the injury "happened as she stressed her knee and something gave way or whether she stressed her knee and it moved abnormally, already being weak, I could only guess."
16. Regardless, at no point did Dr. Newell present any evidence that plaintiff experienced an injury by accident. Dr. Newell did not recall plaintiff ever communicating any unusual circumstances surrounding her fall. Rather, plaintiff only told him that she felt a "pop" in her knee and fell to the ground.
17. Dr. Newell did state that "the environment of a restaurant kitchen serving fast food is a fairly slippery environment and would place anybody's knee at some increased risk of a fall or of a twisting injury." However, this speculative testimony does not establish that plaintiff experienced an injury by "accident," particularly in light of the consistent testimony from plaintiff and her co-employees that she did not slip on anything on April 24, 2006 when she fell.
18. The Full Commission finds that plaintiff has failed to prove by the greater weight of the evidence that a work-related accident was the cause of her knee injury on April 24, 2006.
 *********** *Page 7 
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Except for back injuries and hernias, an injury needs to be an "accident," in order to be compensable under the Workers' Compensation Act. N.C. Gen. Stat. § 7-2 (6).
2. An "accident" must involve more than merely carrying on the usual and customary duties in the usual way. It involves interruption of the work routine and the introduction of an unusual event. Harding v. Thomasand Howard Company, 256 N.C. 427 (1963).
3. Plaintiff has provided insufficient evidence to show that she sustained an injury by accident arising out of and in the course of employment with defendant-employer on April 24, 2006. N.C. Gen. Stat. § 97-2 (6); Anderson v. Northwestern Motor Company, 233 N.C. 372 (1951).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. This claim must under the law be, and is hereby, DENIED.
2. Each side shall pay its own cost.
This 28th day of July 2008.
S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 8 
CONCURRING:
 S/_______________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ DANNY LEE McDONALD COMMISSIONER *Page 1